Miscellaneous Docket No. _____

---

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

---

## IN RE: VAN WELL NURSERY, INC., MONSON FRUIT COMPANY, INC., GORDON GOODWIN, SALLY GOODWIN

*Petitioners*

---

### On Petition For A Writ Of Mandamus To The United States District Court For The Eastern District Of Washington In Case No. 2:20-cv-00181-SAB

---

## PETITION FOR WRIT OF MANDAMUS

William H. Milliken
Ralph Wilson Powers III
STERNE KESSLER GOLDSTEIN & FOX
   PLLC
1101 K Street, N.W., 10th Floor
Washington, DC 20005
T: 202-371-2600
wmilliken@sternekessler.com
tpowers@sternekessler.com

Mark P. Walters
Stephen A. Merrill
LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Suite 1130
Seattle, Washington 98101
T: 206.381.3300
walters@lowegrahamjones.com
stevem@lowegrahamjones.com

*Attorneys for Petitioners Van Well Nursery, Inc., Monson Fruit Company, Inc., Gordon Goodwin and Sally Goodwin*

Dated: June 12, 2025

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number**

**Short Case Caption**   IN RE: VAN WELL NURSERY, INC., MONSON FRUIT COMPANY, INC., GORDON GOODWIN, SALLY GOODWIN

**Filing Party/Entity**   Monson Fruit Company, Inc., Van Well Nursery, Inc., Gordon & Sally Goodwin

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/12/2025

Signature:   /s/ William H. Milliken

Name:   William H. Milliken

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Van Well Nursery, Inc. | Monson Ag Legacy Holdings, LLC, a Delaware limited liability company | Monson Fruit Company, Inc. is wholly owned by Monson Ag Legacy Holdings, LLC, a Delaware limited liability company |
| Monson Fruit Company, Inc. | | |
| Gordon Goodwin | | |
| Sally Goodwin | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

Form 9 (p. 3)
March 2023

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☑    Additional pages attached

| See Attachment | | |
|---|---|---|
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐    Yes (file separate notice; see below)    ☑    No    ☐    N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |

**In Re: Van Well Nursery, Inc., Monson Fruit Company, Inc., Gordon Goodwin, Sally Goodwin**
**Attachment to Certificate of Interest**

**KND Law**
Katie L. Ross
Kent Neil Doll, Jr.

**Practus LLP**
Tim J. Billick

**Lowe Graham Jones**
Mitchell D. West
Carmen Grisaffi
Kevin E. Regan
Miles A. Yanick

**Davis Arneil Law Firm LLP**
Quentin Batjer

**Practus LLP**
Tim J. Billick

**Jones Day**
Jennifer Bennett
Alyssa Marie Orellana
Cary D. Sullivan
John R. O'Donnell
Michelle K. Fischer
Garret Tyler Fox

**Dentons US LLP**
Gaspare J. Bono
Leanna Marie Anderson
Leslie A. Barry
Katherine R. McMorrow

**Paine Hamblen LLP**
Daniel William Short

# TABLE OF CONTENTS

INTRODUCTION AND RELIEF SOUGHT .............................................................1

ISSUES PRESENTED..................................................................................................4

STATEMENT OF JURISDICTION.........................................................................5

STATEMENT REGARDING ORAL ARGUMENT ............................................5

FACTS NECESSARY TO UNDERSTAND THE ISSUES PRESENTED .............6

    A.   Case Background.....................................................................6

    B.   Petitioner's 2022 Motion for Summary Judgment..................8

    C.   The Court's Order Granting Summary Judgment of Invalidity............8

    D.   Additional Briefing on the Legal Viability of the Ancillary Claims...................10

    E.   The District Court's Sua Sponte Bifurcation Order............................10

    F.   Petitioners' Waiver of their Seventh Amendment Right to a Jury.......................11

    G.   AAFC's Motion for Reconsideration.................................................12

    H.   The District Court's Order Granting Reconsideration........................16

REASONS THE WRIT SHOULD ISSUE.................................................................17

I.   The Right to a Writ Is Clear and Indisputable..............................................18

    A.   No New Evidence Supported Reconsideration.....................................20

    B.   No Clear Error or Manifest Injustice Supported Reconsideration......22

        1.   No Clear Error...........................................................................22

        2.   No Manifest Injustice................................................................23

    C.   The District Court Failed to Address Prejudice to Petitioners When it Granted Reconsideration .....................................25

D.    The District Court Clearly Erred by Refusing to Decide
Petitioners' Legal Challenges to the Ancillary Claims.......................27

II.    No Other Adequate Means For Relief is Available ......................................28

III.    A Writ is Especially Appropriate Here .........................................................30

CONCLUSION ......................................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*389 Orange St. Partners v. Arnold*,
    179 F.3d 656 (9th Cir. 1999) ...................................................................20, 21

*Beacon Theatres, Inc. v. Westover*,
    359 U.S. 500 (1959)...............................................................................30, 31

*BearBox LLC v. Lancium LLC*,
    125 F.4th 1101 (Fed. Cir. 2025) ...................................................................30

*Bennett v. Pippin*,
    74 F.3d 578 (5th Cir. 1996) ..........................................................................26

*In re BP Lubricants USA Inc.*,
    637 F.3d 1307 (Fed. Cir. 2011) ....................................................................31

*Carlson v. Boston Scientfic Corp.*,
    856 F.3d 320 (4th Cir. 2017) ............................................................19, 22, 32

*In re Cement Antitrust Litigation (MDL No. 296)*,
    688 F.2d 1297 (9th Cir. 1982) .................................................................32, 33

*Cheney v. U.S. District Court for D.C.*,
    542 U.S. 367 (2004)..................................................................................1, 18

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003)...........................................................................................2

*In re Elsner*,
    381 F.3d 1125 (Fed. Cir. 2004) ....................................................................25

*In re EMC Corp.*,
    677 F.3d 1351 (Fed. Cir. 2012) ..............................................................18, 29

*Frederick S. Wyle Professional Corp. v. Texaco, Inc.*,
    764 F.2d 604 (9th Cir. 1985) ........................................................................21

*Henson v. Fidelity National Financial, Inc.*,
    943 F.3d 434 (9th Cir. 2019) ........................................................................26

iii

*Ingle v. Circuit City*,
   408 F.3d 592 (9th Cir. 2005) ...............................................................19

*Jones v. Ryan*,
   733 F.3d 825 (9th Cir. 2013) ...............................................................26

*Kona Enterprises, Inc. v. Estate of Bishop*,
   229 F.3d 877 (9th Cir. 2000) ...........................................................20, 21

*La Buy v. Howes Leather Co.*,
   352 U.S. 249 (1957).............................................................................29

*In re Marriage of Langham*,
   106 P.3d 212 (Wash. 2005) ..................................................................30

*In re Nintendo Co.*,
   544 F. App'x 934 (Fed. Cir. 2013) .......................................................31

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2009) ............................................................29

*Phelps v. Alameida*,
   569 F.3d 1120 (9th Cir. 2009) ..............................................................26

*In re Pioneer Hi-Bred Int'l, Inc.*,
   238 F.3d 1370 (Fed. Cir. 2001) ............................................................18

*In re Princo Corp.*,
   478 F.3d 1345 (Fed. Cir. 2007) ............................................................28

*Pyramid Lake Paiute Tribe of Indians v. Hodel*,
   882 F.2d 364 (9th Cir. 1989) ...........................................................19, 32

*Relevant Group, LLC v. Nourmand*,
   116 F.4th 917, 926 (9th Cir. 2024) ...................................................20, 22

*In re Shared Memory Graphics LLC*,
   659 F.3d 1336 (Fed. Cir. 2011) ............................................................18

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ............................................................29

iv

*Unigestion Holding, S.A. v. UPM Tech., Inc.*,
  614 F. Supp. 3d 823 (D. Or. 2022) ..............................................19, 31

*In re United States ex rel. Drummond*,
  886 F.3d 448 (5th Cir. 2018) ...........................................................27

*Will v. Calvert Fire Insurance Co.*,
  437 U.S. 655 (1978)...........................................................................27

**Statutes**

28 U.S.C. § 1292(b) .................................................................................29

28 U.S.C. § 1295....................................................................................... 5

28 U.S.C. § 1651....................................................................................... 5

35 U.S.C. § 256.........................................................................................11

**Other Authorities**

Federal Rule of Civil Procedure 54(b).............................................*passim*

Federal Rule of Civil Procedure 60(b)..........................................26, 32

Federal Rule of Civil Procedure 60(c) .................................................32

## INTRODUCTION AND RELIEF SOUGHT

Mandamus is a "drastic" remedy "reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004). But the facts of this case show extraordinary prejudice to Petitioners. Drastic measures are warranted.

In May 2020, the Canadian Minister of Agriculture and Agri-food ("AAFC") sued Petitioners[1] for infringement of U.S. Patent No. PP20,551, a plant patent claiming a late-maturing cherry variety called Staccato. AAFC's infringement claim was based on Petitioners' commercialization of the Glory cherry variety, which AAFC contended was identical to Staccato. AAFC also brought other claims based on the same facts (referred to here as "the Ancillary Claims"), including conversion, tortious interference, unfair competition, and false designation of origin and false advertising under the Lanham Act.

After discovery, Petitioners moved for summary judgment on all claims. They argued that the '551 patent was invalid because the Staccato cherry was on sale, in use, disclosed in printed publications, and otherwise publicly available before the patent's earliest possible critical date (March 2001). And they argued that the Ancillary Claims failed for purely legal reasons—the state-law claims because they are preempted by federal patent law, and the Lanham Act claims because they are

---

[1] Petitioners are Van Well Nursery, Inc. ("Van Well"), Gordon and Sally Goodwin ("Goodwin"), and Monson Fruit Company, Inc. ("Monson").

foreclosed by the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).

The district court granted Petitioners' motion for summary judgment of invalidity in December 2022. The court, however, refused to rule on Petitioners' legal arguments for dismissal of the remaining claims.

Then, in April 2024, the district court bifurcated the case and determined to hold two separate trials: one on whether Glory and Staccato are the same and one on the remaining aspects of AAFC's Ancillary Claims. At the district court's urging, Petitioners waived their right to a jury trial on the first issue. They did so because the significance of any identity between Glory and Staccato had diminished considerably with the patent claim out of the case. Petitioners no longer needed to prove that the cherry varieties are different to prevail on *all* of AAFC's claims against them: the patent claims were gone and Petitioners had strong arguments that the Ancillary Claims were flawed for legal (as opposed to factual) reasons. The district court ultimately found after a bench trial that Glory and Staccato are the same.

Then things went off the rails. In March 2025, the district court vacated its ruling of summary judgment of invalidity—meaning Petitioners were suddenly faced with the prospect of a jury trial on patent infringement in which the jury would be instructed that Petitioners' Glory cherry is the same as AAFC's patented Staccato

2

cherry. The reason for this about-face? AAFC claimed to have newly discovered that a spreadsheet showing pre-critical date sales of Staccato—one of several pieces of evidence the district court had relied on in granting summary judgment of invalidity—had been printed without a handful of rows, one of which contains a reference to a different cherry variety called Sonata. AAFC speculated that this reference to Sonata meant that the sales catalogued in the spreadsheet were not in fact sales of Staccato. That inference was wrong on the facts. More to the point, however, AAFC had had the native version of this spreadsheet for *more than two years*—since March 2022, when a third party produced it to both AAFC and Petitioners. Yet the district court used the spreadsheet as a basis for violating the law of the case and putting the patent infringement claims back in play.

It is hard to conceive of a clearer and more indisputable error. The district court reconsidered a two-year-old summary judgment order based on evidence adduced long before the summary judgment proceedings even commenced. Even worse, in doing so, the district court refused to address numerous alternative grounds for summary judgment of invalidity raised in Petitioners' summary judgment motion. And, even worse than that, the district court refused to grapple with the prejudice that its reconsideration has caused Petitioners, who are now faced with the prospect of a jury trial on infringement in which the jury *might be instructed that Petitioners infringe*—all because of a finding made in a bench trial that Petitioners

3

consented to when patent infringement was no longer at issue in the case.

This Court's intervention is needed now. Unless mandamus is granted, Petitioners will have no effective right to appeal because, should Petitioners lose at trial, they will be unable to effectively show that they would have prevailed on AAFC's infringement claim had the variety sameness issue been tried to a jury along with all the other factual questions pertaining to infringement and invalidity—or, for that matter, had Petitioners prepared to defend against a claim for infringement of the '551 patent over the past two-plus years since that claim was dismissed.

Petitioners therefore respectfully seek an order directing the district court to reinstate its summary judgment ruling. Petitioners also respectfully seek an order directing the district court to rule on their motions to dismiss the Ancillary Claims on purely legal grounds. That is because, without a ruling on those legal challenges, the record would lack findings from which to appeal the district court's apparent conclusion that these claims are legally sufficient.

In short, the district court's errors are of the sort that can only be fully remedied by mandamus because they thrust Petitioners into an unfair trial, one they never prepared for nor could have reasonably anticipated.

## ISSUES PRESENTED

1.      Whether the district court erred in March 2025 by granting a motion for reconsideration vacating its prior order entered in December 2022 granting summary

judgment of invalidity of the '551 patent, where:

a)     Petitioners relied on that order to waive their Seventh Amendment right to a jury in April 2024 on the question whether the accused cherry variety is the same as the patented cherry variety,

b)     the Court failed to weigh the prejudice reconsideration would cause Petitioners,

c)     the Court failed to identify clear error, new evidence, manifest injustice, or a controlling change in law sufficient to justify reconsideration, and

d)     the district court refused to rule on Petitioners' other grounds for invalidity of the '551 patent briefed on summary judgment in 2022.

2.     Whether the Court erred by refusing to rule on Petitioners' legal challenges to the Ancillary Claims.

## STATEMENT OF JURISDICTION

This Court has subject matter jurisdiction over this appeal pursuant to 28 U.S.C. § 1295 and this Court has authority pursuant to the All Writs Act, 28 U.S.C. § 1651, to grant mandamus relief.

## STATEMENT REGARDING ORAL ARGUMENT

Petitioners respectfully request oral argument. Petitioners submit that oral argument would be beneficial to the Court in resolving the issues presented by this petition.

## FACTS NECESSARY TO UNDERSTAND THE ISSUES PRESENTED

### A.    Case Background

Staccato was discovered in 1982 by inventor Dr. David Lane. Appx60. According to the '551 patent, Staccato trees were budded and planted in 1990-1992, and its distinguishing characteristics were conserved through asexual propagation in Summerland, British Columbia, Canada over several seasons before 2000. Appx61(3:17-28), Appx62(6:20-50). According to the operative complaint, "Staccato's most distinguishing characteristic is that the fruit matures, on average, significantly later than most other commercial cherry varieties [which] … extends the cherry harvest season and gives a distinct financial advantage to growers." Appx76(¶23).

In 1990, Petitioner Van Well entered into an agreement with AAFC to test certain varieties, including Staccato. Appx425(¶2). In 1994, Summerland Varieties Corporation ("SVC") (known then as "PICO") became AAFC's exclusive licensee for commercialization of AAFC's tree fruit varieties, including Staccato. Appx426(¶5). SVC oversaw a widespread testing program for Staccato involving several growers in the United States. Appx247(¶4), Appx248-299. By the 2000 cherry season, two growers associated with a U.S. fruit-packing warehouse called Stemilt, Bob and Kyle Mathison, had collectively planted approximately 65-70 total acres of Staccato, some of which were fruiting. Appx343-344(73:5-74:23),

6

Appx353, Appx354, Appx342(68:19-69:14).

In 1998, Van Well became a sublicensee of SVC, authorized to sell another AAFC variety called "Sonata." Appx426(¶7). Petitioner Goodwin purchased 200 Sonata trees from Van Well that were delivered and planted in 2000. Appx426(¶¶8-10). In 2003, Goodwin noticed that one of the Sonata trees matured later than the others. Appx426-427(¶¶11-12). Believing he discovered a new variety, Goodwin worked with Van Well to asexually propagate the plant—deemed "Glory"—and to obtain a patent on it (U.S. Patent No. PP22,693). Appx427(¶¶13-14); Appx428-434.

AAFC and SVC disputed whether Glory was distinct from Staccato beginning in 2012. Appx72(¶7). The dispute over Glory's provenance remained unresolved by 2016, when Van Well returned ownership of the '693 patent to Mr. Goodwin. Appx436.

In March 2017, a peer-reviewed study published concluding that Glory was distinct from Staccato. Appx440(¶¶3-4), Appx442-450. Relying on this study, Van Well began once again to propagate and sell Glory. Appx72(¶8). AAFC sued in May 2020, over eight years after it first disputed that Glory was distinct from Staccato. Appx18.

### B.   Petitioner's 2022 Motion for Summary Judgment

Petitioners moved for summary judgment in August 2022.[2] Appx300-330. Petitioners' motion relied on testimony from the inventor and SVC to establish that the testing of Staccato in the U.S. before the critical date was not experimental. Appx301-307 (citing Appx355-359, Appx337-338, Appx339-344, Appx360-367, Appx412-415). Petitioners also cited documents and testimony from Staccato test growers, including Stemilt and Kyle Mathison, showing public use through the testing and sale of Staccato before the critical date. Appx308-309 (citing Appx377-408, Appx409-411, Appx416-423, Appx451-456). Petitioners also relied on pre-critical-date publications disclosing Staccato. Appx345-351, Appx368-376, Appx523-536.

Petitioners' motion challenged the Ancillary Claims on purely legal grounds, and further argued that, even if the claims were legally sufficient, the evidence was insufficient to create a genuine issue of material fact for trial. Appx325-330.

### C.   The Court's Order Granting Summary Judgment of Invalidity

The district court granted summary judgment of invalidity of the '551 patent

---

[2] This was Petitioners' second motion for summary judgment on invalidity. Their first had relied in part on nursery invoices, signed purchase orders, and growing contracts establishing that Staccato had been on sale before the critical date. Appx24, Appx451-456. The district court denied that motion, concluding that a jury could find that all the growers in question had contracts with AAFC through which AAFC retained all ownership rights in the Staccato plant material. Appx459.

in December 2022, finding that Staccato was on sale before the critical date. Appx99.
According to the district court, Kyle Mathison's testimony and documents from his
packing warehouse Stemilt established that Stemilt received and packed just over 11
tons of Staccato in 2000 and sold just over 9 tons. Appx96. The district court's ruling
was also based on a spreadsheet showing that Stemilt sold Staccato in 2000 for
$37,683 at a price of $2.0705 per pound. Appx96, Appx402-408.

AAFC opposed summary judgment by arguing, among other things, that the
testing of Staccato in the U.S. was experimental and that Staccato was not reduced
to practice until 2001 or later. Appx102-103. The district court, however, found that
Staccato was reduced to practice before the 2000 cherry season based on admissions
in the '551 patent that Staccato "(1) was known to possess characteristics that
distinguished it as a new, late-harvest variety, and (2) was reproduced through
asexual propagation in Canada for each season after 1992." Appx103. The district
court further found that the U.S. testing of Staccato before the critical date was "for
geographic market viability," not experimental purposes. Appx103-104.

Regarding the Ancillary Claims, the district court denied the motion,
reasoning that "[t]he parties genuinely dispute whether Staccato is the same fruit
variety as Glory, the origin of Glory, whether Defendants had title to the specific
trees and/or fruit in question, whether there has been consumer confusion regarding
Staccato and Glory, and the physical qualities of Glory trees and fruit." Appx104-

105. The court did not address Petitioners' legal arguments.

### D.    Additional Briefing on the Legal Viability of the Ancillary Claims

On January 20, 2023, the parties filed a joint status report with their opposing views on the case status. Appx41. For their part, Petitioners requested dismissal of the Ancillary Claims on the previously raised legal grounds or, alternatively, additional briefing on the issue. Appx462; Appx466.

The district court again refused to rule on the legal viability of the Ancillary Claims. Instead, it issued a new scheduling order, setting a new trial date for the Ancillary Claims, inviting either party to move to reopen discovery, and setting a date for another round of dispositive motions. Appx467-470.

Neither party elected to reopen discovery. In September 2023, Petitioners filed another dispositive motion seeking dismissal of the Ancillary Claims on legal grounds (conceding for purposes of the motion that "Glory is Staccato"). Appx43-44, Appx471-491. The district court denied that motion in February 2024, stating that "genuine disputes of material fact remain that precludes [sic] the Court from ruling that Defendants are entitled to judgment as a matter of law." Appx492-494.

### E.    The District Court's Sua Sponte Bifurcation Order

The parties then prepared for a jury trial on the Ancillary Claims. In April 2024—one day after the proposed pretrial order was filed—the district court proposed to bifurcate the issue of whether Glory is Staccato and hold a bench trial

on that issue alone. Appx495-496.

Petitioners did not object to a bench trial on this issue. Since the patent infringement claim was no longer in the case, the question whether Glory is Staccato mattered principally to AAFC's claim for change of inventorship under 35 U.S.C. § 256—an equitable matter that would typically be decided by the court anyway. Appx499-500; Appx503. The dispute about variety sameness, as Petitioners stated at the time, was "of little or no consequence to AAFC's remaining claims under the Lanham Act, Washington's CPA, tortious interference, and conversion because an affirmative answer to this question will not result in liability for any Defendant, nor is this question an element of any of AAFC's remaining claims." Appx503-504.

## F.    Petitioners' Waiver of their Seventh Amendment Right to a Jury

Just prior to the final pretrial conference scheduled for April 11, 2024, AAFC proposed a written Seventh Amendment waiver on the question whether Glory is Staccato. Appx518. Petitioners had not fully considered AAFC's proposed waiver, so the district court called a recess "to allow counsel to discuss." Appx518. As the minutes reflect, the district court grew impatient with counsel for Petitioners, ordering them "to either agree in the next 5 minutes or not," asking them "what the issue is," calling another recess, and finally ordering Petitioners to "[e]ither stipulate or w[e] will have a jury trial, either way is fine with the Court." Appx518.

Rather than incur the added expense and complication of a jury trial on a

question that, based on the law of the case at the time, could have only resolved the case in their favor, Petitioners agreed to waive their Seventh Amendment right to a jury on the question of variety sameness. Appx512-516.

The Court then commenced a bench trial on the single question whether Glory is Staccato. Appx52. In August 2024, the Court answered that question in the affirmative. Appx545.

### G. AAFC's Motion for Reconsideration

Months later—in January 2025—AAFC filed a motion for reconsideration, asking the district court to vacate its order finding invalidity of the '551 patent. Appx106-145. AAFC alleged "[t]he order was based on false evidence" and that "[t]he actual evidence contradicts and disproves Defendants' invalidity arguments." Appx111. Specifically, AAFC argued that counsel for Petitioners had "misrepresented" a spreadsheet produced by Stemilt by "deliberately or not" excluding the first ten rows of the spreadsheet. Appx112. AAFC argued further that "[t]he excluded rows and Mr. Mathison's trial testimony conclusively establish that the sales were actually of Sonata, an entirely different cherry, and could not have been Staccato sales." Appx111.

The spreadsheet in question had been produced in native format to both parties by Stemilt months before summary judgment, in March 2022. Appx166(¶7). It was identified by Kyle Mathison on July 1, 2022, as a "pool closing," Appx381(234:18-

12

22), and marked in native format as Exhibit 38 to his deposition, Appx166(¶¶7-8).

As shown below, Exhibit 38 identifies Staccato as "STOCATA"[3] in three places:

column B at row 1, and column C, at rows 4 and 14. Appx185. Exhibit 38 also says

"Sonata" in column V, line 1. Appx185.



Appx185.

A printed version of Exhibit 38 submitted on summary judgment, Appx402-

408, did not show the "Sonata" cell due to automatic formatting in the native

document, which only printed rows 11-29 of the first sheet. Appx166-168(¶¶8-9).

Petitioners intended to print all data in the file, and they did not know the file printed

incompletely until AAFC raised the issue in October 2024. Appx168(¶9).

Because the native spreadsheet had been available to *all* parties long before

summary judgment, AAFC did not (and could not) argue that it constituted new

evidence. Instead, AAFC argued Kyle Mathison's April 2024 trial testimony alerted

them for the first time that the sales in Exhibit 38 could not have been Staccato.

---

[3] Mr. Mathison testified that "STOCATA" was a misspelling of "Staccato" and that it reflected the way farmers pronounced the variety. Appx96.

Appx111. Specifically, AAFC pointed to Mr. Mathison's trial testimony that "Stemilt harvested Staccato in August" and then noted that Exhibit 38 reports pool dates for the middle of July—which, according to AAFC, meant that the reported sales "could only have been Sonata, not Staccato." Appx115.

Petitioners opposed reconsideration on multiple grounds, including because Exhibit 38 and Mr. Mathison's trial testimony were not new evidence. Appx154-155. The *'551 patent itself* compares Staccato's harvest timing to Sonata and notes that Staccato's is later.[4] Appx62(6:20-50). Petitioners also disputed AAFC's contention that Exhibit 38's single reference to "Sonata" in a far-flung cell changed anything. Appx155-157. There remained no dispute Stemilt received over 20,000 lbs of Staccato in 2000 and packed over 18,000 lbs. Appx96, Appx383, Appx394. Mr. Mathison had also testified that the "packed pounds" of Staccato were sold and shipped into the commercial market and confirmed that the sales reflected in Exhibit 38 were of Staccato, sold on "FOB terms" with title to the cherries passing to the buyers. Appx179(205:14-17), Appx207(229:14-23), Appx209-210(231:2-232:9), Appx212(235:3-16), Appx213-215(236:13-238:21). Finally, Mr. Mathison testified based on Exhibit 38 that he grew and sold the Staccato cherries in 2000. Appx216-217(239:15-240:5).

---

[4] Sonata is also called "Sumleta," Appx426(¶7), and is referred to as such in the '551 patent.

14

Petitioners also explained that summary judgment of invalidity remained supported on grounds independent from Stemilt's sales, including pre-critical-date public uses and publications—issues briefed on summary judgment in 2022 but not reached by the district court in light of its on-sale conclusion. Appx157. Given the district court's finding on summary judgment that the widespread testing of Staccato before the critical date was not experimental, Appx103-104, summary judgment of invalidity of the '551 patent remained appropriate regardless of any issues with Exhibit 38.

Finally, Petitioners explained they would be greatly prejudiced if the court reconsidered summary judgment now that the issue of variety sameness had been resolved adversely to Petitioners without a jury. Appx158-159. Petitioners averred they would not have waived their right to a jury in April 2024 on the issue of variety sameness had there been a claim for patent infringement in the case at that time. Appx168-169(¶13).

On reply, AAFC claimed for the first time that Petitioners' exclusion of rows 1-10 of Exhibit 38 on summary judgment was "demonstrably deliberate," and that Petitioners' prejudice argument "contradict[ed]" earlier positions Petitioners had taken. AAFC's "contradiction" arguments, however, cited exclusively to statements made by Petitioners in April 2024 in response to the district court's sua sponte order to bifurcate the case—that is, *after* summary judgment of invalidity had been

15

granted. Appx223, Appx224 (citing Appx500, Appx503).

## H.    The District Court's Order Granting Reconsideration

In March 2025, the district court granted AAFC's motion for reconsideration, finding "clear error in granting summary judgment on the issue of patent invalidity." Appx3. The court found further that "[n]ew evidence of the complete Exhibit 38 and Mr. Mathison's trial testimony create genuine issues of material facts regarding whether Stemilt sold Sonata, not Staccato, in 2000." Appx3. On the issue of prejudice to Petitioners, the Court found

> Defendants have not shown they would be prejudiced if the Court were to reconsider its prior order on the validity of the patent. It is undisputed that Defendants excluded the first ten rows of Exhibit 38 that stated the sales were actually of Sonata, an entirely different cherry, then falsely represented to the Court that Exhibit 38 was an accurate copy of the original spreadsheet. It would be manifestly unjust to excuse this behavior at this stage of the proceedings. Defendants' assertions that they relied on the Court's invalidity order when they waived their right to a jury contradicts earlier representations to the Court.

Appx3-4.

Petitioners moved for reconsideration, requesting again that the district court consider alternative grounds for invalidity of the '551 patent that were briefed in 2022. Appx235-236. Petitioners also explained that AAFC's reply arguments calling Petitioners' alleged reliance on summary judgment contradictory were unsupported because they relied exclusively on statements from April 2024—statements that were themselves made in reliance on the 2022 summary judgment and in direct

16

response to the court's sua sponte bifurcation order. Appx232. Petitioners also reminded the district court that AAFC had not alleged fraud or a "deliberate" misrepresentation in their motion, that AAFC failed to object to the formatting of Exhibit 38 in 2022 despite having the native file, and that the evidence only supported an accidental printing error. Appx236-238.

On April 22, 2025, the district court denied Petitioners' motion for reconsideration without comment on Petitioners' prejudice argument, without resolving Petitioners' arguments that Exhibit 38 plus Mr. Mathison's trial testimony could not qualify as "new evidence," without comment on Petitioners' state of mind when they submitted a printed version of Exhibit 38 on summary judgment in 2022, and without deciding the alternative grounds for invalidity briefed in 2022. Appx241-244. Instead, the court cited its order from 2021 denying summary judgment. Appx242. That order, however, had issued before Petitioners obtained evidence through discovery showing the extent of Staccato's pre-critical-date public use and publication, Appx301-325—the very evidence the district court relied on in December 2022 to find as a matter of law that the widespread pre-critical-date public use of Staccato in the US was not experimental and that Staccato had been reduced to practice "prior to 2000," Appx103-104.

## REASONS THE WRIT SHOULD ISSUE

A writ of mandamus is proper if: (1) the right to issuance of the writ is clear

and indisputable; (2) there is no other adequate means to attain the relief; and (3) the writ is appropriate under the circumstances. *E.g.*, *Cheney*, 542 U.S. at 380-81. Each factor is satisfied in this case.

## I.    The Right to a Writ Is Clear and Indisputable

Mandamus may be employed to correct "a clear abuse of discretion or usurpation of judicial power." *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012). In vacating a more than two-year-old order granting summary judgment of invalidity of the '551 patent absent extraordinary circumstances such as new evidence, clear error, or manifest injustice—and thereby failing to protect Petitioners' reliance on that order as required by the law of the case doctrine—the district court both clearly abused its discretion and usurped judicial power. Petitioners' right to a writ is clear and indisputable.

A request for mandamus relief is determined under Federal Circuit law, except to the extent that underlying procedural issues may be governed by the law of the regional circuit (here, the Ninth Circuit). *In re Shared Memory Graphics LLC*, 659 F.3d 1336, 1340 (Fed. Cir. 2011) (citing *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1374 (Fed. Cir. 2001)).

Under Federal Rule of Civil Procedure 54(b), an order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." "The rule, however, does not address the standards that a

district court should apply when asked to reconsider an interlocutory order, and the Ninth Circuit has not established a standard of review." *Unigestion Holding, S.A. v. UPM Tech., Inc.*, 614 F. Supp. 3d 823, 828 (D. Or. 2022). The Ninth Circuit has, however, noted that, despite the availability for revision under Rule 54(b), "the orderly administration of lengthy and complex litigation such as this requires the finality of orders be reasonably certain." *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989). Other circuits have agreed that "the discretion Rule 54(b) provides is not limitless." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). Such questions are therefore properly addressed under the law of the case doctrine. *Id.*

Under that doctrine, "'a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case.'" *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (quoting *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000)). The doctrine exists to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. *Id.* (citing 18B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4478, at 637-38 (2002)). A district court may depart from the law of the case only when "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially

different evidence was adduced at a subsequent trial." *Relevant Grp., LLC v. Nourmand*, 116 F.4th 917, 926 (9th Cir. 2024). "In the first scenario, where there has been no intervening change in the law nor new evidence offered, the district court judge must explain (1) why the previous decision is clearly erroneous and (2) why enforcement of the previous decision would work a manifest injustice." *Id.* (cleaned up).

## A.    No New Evidence Supported Reconsideration

Here, "complete Exhibit 38" is not new evidence; the native file was produced to AAFC months before summary judgment in 2022. Appx166-167(¶¶7-8). Nor is Mr. Mathison's trial testimony regarding the harvest timing of Staccato new evidence. The fact that Staccato typically harvests at the end of July or early August is disclosed *in the specification of the '551 patent*. Appx62(6:20-50). Reconsideration cannot be used to raise arguments or present evidence that could have been raised earlier in the litigation. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999); *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890-91 (9th Cir. 2000). But that is exactly the way it was used here.

AAFC alleged that Mr. Mathison's trial testimony was "necessary to demonstrate that Stemilt's 2000 sales were not for Staccato, and was unavailable to the Court (and the parties) at the time of the Order." Appx118. Neither is true. Mr. Mathison was deposed on three separate occasions, the last of which was for the

20

specific purpose of addressing Stemilt's supplemental document production, including Exhibit 38. Appx165(¶¶3-4), Appx166(¶7). AAFC could have asked him why Exhibit 38 said "Sonata" in column V,[5] or why the pool dates seemed too early for Staccato, but it failed to do so. Simply put, because AAFC had an opportunity to depose Mr. Mathison and ask him about Exhibit 38, including when Stemilt harvested Staccato in 2000, his trial testimony does not qualify as "new evidence." *See 389 Orange*, 179 F.3d at 665 (affirming denial of reconsideration because arguments could have been developed before judgment); *Kona*, 299 F.3d at 890 (same); *see also Frederick S. Wyle Pro. Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985) (evidence available to party before it filed its opposition was not "newly discovered evidence" warranting reconsideration of summary judgment). Neither AAFC nor the district court explained how his testimony was "unavailable" until trial in April 2024. Appx118, Appx1-4.

Because the evidence AAFC relied on "was available *well before* summary

---

[5] As submitted on summary judgment by Petitioners, Exhibit 38 included additional sheets associated with pools 6-11. Appx403-408. These sheets each reference "Sonata" and pools 6-11 match the pool numbers for Sonata listed on Exhibit 36. *Compare* Appx403-408, *with* Appx394. This is consistent with someone using the Sonata pool closing and repurposing it to calculate "STOCATA" sales. Mr. Mathison confirmed it "makes sense to me" that Staccato would be in a "later pool" like those listed on Exhibit 38 for "STOCATA," i.e., pools 15-17. Appx380 (230:23-231:1). Pools 15-17 match the pools numbers for STOCATA on Exhibit 36, providing further evidence that Exhibit 38 reports Staccato sales. *Compare* Appx185, *with* Appx394.

judgment briefing," the evidence "did not amount to the type of evidence constituting grounds for a valid motion for reconsideration." *Carlson*, 856 F.3d at 326 (emphasis in original). As such, the district court should have denied AAFC's motion for reconsideration, as in *Carlson*. *Id.*, 325-26. By granting the motion, the district court clearly abused its discretion and usurped judicial power.

### B. No Clear Error or Manifest Injustice Supported Reconsideration

### 1. No Clear Error

In the absence of new evidence, a district court must explain "(1) why the previous decision is clearly erroneous and (2) why enforcement of the previous decision would work a manifest injustice." *Relevant Grp.*, 116 F.4th at 926 (cleaned up). The district court did neither—nor could it have.

Critically, Exhibit 38 was not the only evidence submitted to show that Staccato was on sale in 2000. Petitioners also relied on Exhibits 36 and 18. Appx308. They showed that over 20,000 pounds of Staccato were "received" by Stemilt in 2000, meaning that possession of the fruit was transferred from a grower to Stemilt. Appx383, Appx394. And Exhibit 36 showed that 18,200 pounds were "packed" by Stemilt, i.e. sorted, culled, and placed into containers ready for sale. Appx394. Mr. Mathison testified that "the packed pounds of cherries" were then sold into the commercial market. Appx179(205:14-17). He also described Exhibit 36 as "a standard accounting procedure that we … operate through at Stemilt to pay growers

22

for what they bring in." Appx207(229:14-23). Thus, even ignoring Exhibit 38, Mr. Mathison's testimony, as corroborated by Exhibit 36, confirms the pre-critical-date public use and sale of Staccato because it shows the transfer of Staccato cherries from the grower to Stemilt for packing and sale. Appx216-217(239:15-240:5).

Moreover, there is nothing at all "clear" from the reference to "Sonata" in cell V:1 on the first sheet of Exhibit 38. That it remained unnoticed for more than two years undermines any claim that it materially changes what the document proves. Indeed, the spreadsheet says "STOCATA" in *three places*. Appx185. And Mr. Mathison, who inspected Exhibit 38 in its native format at his deposition, identified it as an authentic Stemilt "pool closing," showing that Stemilt sold 18,200 pounds of Staccato in 2000 for $37,683. Appx211(234:18-22), Appx213(236:3-20). The "pounds packed" in Exhibit 38 only match the pounds packed reported in Exhibit 36 for *Staccato*, further confirming that Exhibit 38 is reporting *Staccato* sales, not the sale of Sonata. Thus, the stray reference to "Sonata" in cell V:1 of Exhibit 38 changes nothing about what the document proves and it is far more consistent with someone repurposing a Sonata spreadsheet and using it to calculate sales for Staccato, a variety Stemilt was packing for the first time in 2000. Appx96.

### 2.    No Manifest Injustice

The district court also failed to show that its summary-judgment finding of invalidity of the '551 patent was manifestly unjust because it refused to rule on the

alternative grounds for invalidity briefed by Petitioners, including invalidity based on the public use or publication of Staccato before the critical date. This refusal was particularly egregious in light of the district court's finding (which has never been revisited) that the widespread pre-critical-date testing of Staccato in the U.S. was not experimental use and that Staccato was reduced to practice in Canada before 2000. Appx103-104. These findings remain the law of this case, and they mandate a finding that Staccato was in public use by several growers and nurseries, including the Mathisons who had collectively planted thousands of Staccato trees by 2000. Appx343-344(73:5-74:23), Appx353, Appx354, Appx342(68:19-69:14).

The Mathisons were not the only pre-critical-date Staccato growers. Petitioners submitted evidence on summary judgment in 2022 showing public use by Elmar zur Hausen and Rick Derry, neither of whom had any contractual relationship with AAFC or SVC. Appx537-544, Appx417-423. Indeed, the use of Staccato by U.S. growers having no connection to AAFC or SVC was so out of control by 2002 that SVC attempted to rein it in by publishing an advertisement in a local trade publication called the Good Fruit Grower, offering "amnesty" to any growers who had planted Staccato without authorization. Appx387. Several growers responded to the advertisement, some of whom were confirmed to have grown Staccato before the critical date. Appx409(106:4-13); Appx410-411, Appx456, Appx417-423.

24

In addition to public use, Petitioners offered evidence on summary judgment that several printed publications disclosed Staccato before the critical date. Appx345-351, Appx368-376, Appx523-536. Because growers had access to Staccato plant material through SVC's testing program before the critical date, these publications are enabling as a matter of law. *In re Elsner*, 381 F.3d 1125, 1128 (Fed. Cir. 2004).

In short, the district court, by refusing to rule on independent grounds for invalidity of the '551 patent that were briefed on summary judgment in 2022, failed to discharge its duty to show manifest injustice and clear error.

### C.    The District Court Failed to Address Prejudice to Petitioners When it Granted Reconsideration

The district court also clearly erred by finding that Petitioners' "assertions that they relied on the Court's invalidity order when they waived their right to a jury contradicts earlier representations to the Court." Appx4. No support was cited for this finding, but it was presumably based on arguments made by AAFC in reply that Petitioners' prejudice argument "directly contradicts their earlier representations to this Court." Appx224-225 (citing Appx501-511, Appx517-520).

Petitioners explained in their motion for reconsideration that AAFC's reply arguments were plainly wrong because they were based on statements made in April 2024, *long after* the 2022 grant of summary judgment. Appx226-240. Those positions, taken by Petitioners in direct response to the district court's sua sponte

bifurcation proposal, are wholly consistent with Petitioners' position that they relied on the summary judgment order to waive their right to a jury, and that, but for that order, Petitioners never would have waived. Appx168-169(¶13).

The district court's order denying Petitioners' motion for reconsideration says nothing about prejudice to the Petitioners. Appx241-244. But prejudice against a party who benefited from an earlier ruling challenged on reconsideration must be considered. Within the context of Fed. R. Civ. P. 60(b), the Ninth Circuit has said that reconsideration "is less warranted when the final judgment being challenged has caused one or more of the parties to change his legal position in reliance on that judgment." *Phelps v. Alameida*, 569 F.3d 1120, 1138 (9th Cir. 2009) (courts must decide "whether granting the motion to reconsider would 'undo the past, executed effects of the judgment,' thereby disturbing the parties' reliance interest in the finality of the case") (quoting *Ritter v. Smith*, 811 F.2d 1398, 1402 (11th Cir. 1987)); *see also Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 450 (9th Cir. 2019); *Jones v. Ryan*, 733 F.3d 825, 839-40 (9th Cir. 2013). Other circuits say the same where the challenged order is interlocutory and reconsideration is requested under Rule 54(b). *See*, *e.g.*, *Bennett v. Pippin*, 74 F.3d 578, 586–588 (5th Cir. 1996) (district court erred in reinstating county as defendant only one hour before trial to bench was set to begin, not only because county's trial preparation was prejudiced, but also because right to jury trial was denied).

**D.    The District Court Clearly Erred by Refusing to Decide Petitioners' Legal Challenges to the Ancillary Claims**

Petitioners have twice sought a ruling from the district court on whether the Ancillary Claims should be dismissed on purely legal grounds, but the district court has failed to rule on Petitioners' legal arguments. Appx325-330, Appx104-105, Appx471-491, Appx492-494. This failure, too, justifies mandamus relief.

As the Supreme Court has explained, "where a district court persistently and without reason refuses to adjudicate a case properly before it, the court of appeals may issue the writ 'in order that [it] may exercise the jurisdiction of review given by law.'" *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661-62 (1978) (quoting *Insurance Co. v. Comstock*, 16 Wall. 258, 270 (1873)). Multiple circuit courts have granted mandamus based on a district court's delay in ruling on a dispositive motion. *E.g.*, *In re United States ex rel. Drummond*, 886 F.3d 448, 450 (5th Cir. 2018) (collecting cases). In *Drummond*, for example, the Fifth Circuit granted mandamus where the district court had "ample time to consider" pending motions for partial summary judgment, indicating that "all three requirements [for mandamus] are easily met." *Id.*, 449-50.

Like in *Drummond*, Petitioners' requests for the district court to assess the legal sufficiency of the Ancillary Claims have been ignored. Instead, the district court simply stated that there exist genuine issues of material fact, Appx104-105, Appx492-494, never addressing the legal arguments presented by Petitioners,

Appx325-330, Appx471-491. That is clear and indisputable error.

## II.    No Other Adequate Means For Relief is Available

Under both issues for which Petitioners seek mandamus, no other adequate means for relief is available. A petitioner lacks "adequate" alternative means to obtain the relief sought where the rights it seeks to protect "cannot be vindicated by direct appeal." *In re Princo Corp.*, 478 F.3d 1345, 1357 (Fed. Cir. 2007).

Absent mandamus relief, the only relief available to Petitioners will be a direct appeal following final judgment in the case below. Such a direct appeal is an inadequate remedy in this case because, should Petitioners lose at trial on the patent infringement claim, they will be unable to show that the case would have turned out differently had the variety sameness issue been tried to a jury. Nor will petitioners be able to show how the district court's reversal of summary judgement—after two years of litigation without a claim for patent infringement in the case—affected their ability to defend against the claim. Undoubtedly, Petitioners would have made different decisions in this case over the past two years had there been a claim for infringement in the case—starting with objecting to the Court's sua sponte bifurcation order and next by refusing to waive their right to a jury. Appx168-169(¶13). Additionally, had Petitioners been aware of AAFC's objections to Exhibit 38, they could have taken additional discovery to learn why it references "Sonata" in a far-flung cell. Appx467-468.

Thus, the district court's error here is no different from an erroneous order denying transfer, where mandamus is appropriate because a petitioner cannot show it "would have won the case had it been litigated in the other venue," making post-trial appeal inadequate. *In re Nintendo Co.*, 589 F.3d 1194, 1201 (Fed. Cir. 2009); *EMC Corp.*, 677 F.3d at 1354–55. And, because interlocutory review under 28 U.S.C. § 1292(b) of the district court's order vacating summary judgment is not available, mandamus is necessary. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1322 (Fed. Cir. 2008).

The Supreme Court has recognized that supervisory control through mandamus is "necessary to proper judicial administration." *La Buy v. Howes Leather Co.*, 352 U.S. 249, 259-60 (1957). The district court's reversal on invalidity prejudices Petitioners at trial because they will now have to defend a claim for infringement of the '551 patent without their right to have the jury decide the variety sameness issue and without discovery they would have taken had AAFC raised an objection to the formatting of Exhibit 38 sooner. Indeed, Petitioners are now much worse off than they would have been had they never moved for summary judgment in the first place.

Regarding the district court's failure to decide Petitioners' legal challenges to the Ancillary Claims, Petitioners have been denied a basic right to a decision on the legal sufficiency of these claims. Without findings by the district court regarding the

29

legal limits of these claims, Petitioners cannot prepare their case for trial. For example, on the conversion claim, does that claim extend to trees made by Petitioners through asexual propagation and the fruit produced by those trees? Or is it limited (as it should be based on the law of conversion and federal conflict preemption) to the trees and fruit, if any, for which AAFC can establish a property interest? *See In re Marriage of Langham*, 106 P.3d 212, 218-19 (Wash. 2005); *BearBox LLC v. Lancium LLC*, 125 F.4th 1101, 1111-14 (Fed. Cir. 2025).

## III.    A Writ is Especially Appropriate Here

Although a writ of mandamus is an extraordinary form of relief, there are at least two reasons such a writ is especially appropriate in this case.

First, the district court's actions have eroded Petitioners' complete right to a jury trial. Whenever a district court's decision works to deny a litigant's Seventh Amendment right to a jury, mandamus is an appropriate remedy. As the Supreme Court put it: "[w]hatever differences of opinion there may be in other types of cases, we think the right to grant mandamus to require jury trial where it has been improperly denied is settled." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 511 (1959).

Here, Petitioners waived a jury trial with respect to the issue of whether Glory was the same as Staccato only because the district court had granted summary judgement of invalidity nearly a year and a half prior to the waiver. Appx168-

169(¶13). As of April 2024, a finding that Glory was the same as Staccato made no practical difference to Petitioners' defenses to the Ancillary Claims based on state law for conversion, tortious interference, and unfair competition. Nor did that finding matter to Petitioners' defenses to existing claims under the Lanham Act. That is because Petitioners' principal defenses to those claims are purely legal—not factual. Appx325-330, Appx471-491.

By vacating its two-year-old summary judgment order, the district court made the issue of whether Glory was the same as Staccato important again. But Petitioners now cannot have this issue decided by a jury. Appx512-516. The district court's decision to vacate a two-year-old order (based on evidence that was not new) has thus effectively denied Petitioners' right to a jury trial on this issue, making mandamus the appropriate remedy. *Beacon Theatres*, 359 U.S. at 511.

Second, mandamus may issue "to further supervisory or instructional goals where issues are unsettled and important." *In re Nintendo Co.*, 544 F. App'x 934, 936 (Fed. Cir. 2013) (citing *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1313 (Fed. Cir. 2011)). Here, there is a paucity of caselaw involving the reversal of an interlocutory order granting partial summary judgment under Rule 54(b). *See Unigestion Holding*, 614 F. Supp. 3d at 828 (noting no established standard of review for motions to reconsider interlocutory orders under Rule 54(b)). Notably, had final judgment entered on the district court's order granting invalidity of the

'551 patent, reconsideration of that judgment under Rule 60(b) would not have been available on the grounds asserted by AAFC. *See* Fed. R. Civ. P. 60(c) (requiring any motion based on mistake, new evidence, or fraud to be filed "no more than a year after the entry of the judgment or order or the date of the proceeding"). Because "the discretion Rule 54(b) provides is not limitless," *Carlson*, 856 F.3d at 325, it makes no sense that the district court would be permitted to do under Rule 54(b) what it could not under Rule 60(b)—particularly given the facts here and where the judgment would have been final had the court ruled on Petitioners' legal arguments addressing the Ancillary Claims.

If the district court's order vacating a two-year-old order granting summary judgment were to stand, litigants may be less likely to seek summary judgment orders, particularly in patent cases, which are complex and often extend over several years as this one has. Indeed, the finality of summary judgment orders would no longer be "reasonably certain," undermining the "orderly administration of lengthy and complex litigation." *Pyramid Lake Paiute Tribe*, 882 F.2d at 369 n.5. This would lead to more costly and inefficient litigations. Failing to address through mandamus the district court's unwarranted reversal of a two-year-old dipositive order would thus "adversely affect the efficient operation of the district courts" in patent cases. *In re Cement Antitrust Litigation (MDL No. 296)*, 688 F.2d 1297, 1304 (9th Cir. 1982).

At the same time, the way the district court proceeded (by reversing a two-year-old summary judgment ruling without assessing prejudice to the party who benefitted and relied on that ruling) is a collateral issue that "would repeatedly evade review" if not addressed through mandamus. *Id.*

Resolution of the issue presented here is thus critical to proper judicial administration. It would "eliminate uncertainty and add importantly to the efficient administration of justice." *Id.* A writ of mandamus is appropriate in such circumstances.

## CONCLUSION

For the foregoing reasons, the Court should grant this petition and order the district court to (i) reinstate its summary judgment order and (ii) rule on the Petitioners' legal challenges to the Ancillary Claims.


Dated: June 12, 2025


/s/ William H. Milliken
William H. Milliken
Ralph Wilson Powers III
STERNE KESSLER GOLDSTEIN & FOX PLLC
1101 K Street, N.W., 10th Floor
Washington, DC  20005
T: 202-371-2600
wmilliken@sternekessler.com
tpowers@sternekessler.com

Mark P. Walters
Stephen A. Merrill
LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Suite 1139
Seattle, WA 98101
T: 206.381.3300
walters@lowegrahamjones.com
stevem@lowegrahamjones.com

*Attorneys for Petitioners Van Well Nursery, Inc., Monson Fruit Company, Inc., Gordon Goodwin and Sally Goodwin*

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** _____

**Short Case Caption:** _IN RE: VAN WELL NURSERY, INC., MONSON FRUIT COMPANY, INC., GORDON GOODWIN, SALLY GOODWIN_

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑  the filing has been prepared using a proportionally-spaced typeface and includes __7,548____ words.

☐  the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐  the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: __06/12/2025_____          Signature: _/s/ William H. Milliken_____

                                  Name: __William H. Milliken_____

Save for Filing

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF SERVICE

**Case Number** _____

**Short Case Caption** IN RE: VAN WELL NURSERY, INC., MONSON FRUIT COMPANY, INC., GORDON GOODWIN, SALLY GOODWIN

> **NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on  06/12/2025

by  ☐  U.S. Mail   ☐   Hand Delivery   ☑ Email   ☐ Facsimile
    ☐  Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| See Attached List | |
| | |
| | |
| | |
| | |

☑   Additional pages attached.

Date: 06/12/2025

Signature: /s/ William H. Milliken

Name: William H. Milliken

**<u>Via Email</u>**

Alyssa Marie Orellana
Jones Day
4655 Executive Drive, Suite 1500
San Diego, CA 92121
Telephone: (858) 314-1177
aorellana@jonesday.com

Cary D. Sullivan
Jones Day
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: (949) 851-3939
carysullivan@jonesday.com

Jennifer D. Bennett
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104
 Telephone: (415) 875-5700
jenniferbennett@jonesday.com

 John R. O'Donnell
Jones Day
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 243-2155
jodonnell@jonesday.com

Michelle K. Fischer
Jones Day
901 Lakeside Avenue E
Cleveland, OH 44114
Telephone: (216) 586-3939
mfischer@jonesday.com

Copies of the foregoing are also being hand-delivered to:

Honorable Stanley A. Bastian
William O. Douglas United States Courthouse
25 South 3rd St. Room 201
Yakima, WA 98901